# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2448

CHRISTOPHER HOLLY,

*Plaintiff-Appellant,*

v.

D. WOOLFOLK, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 CR 2563—**Ruben Castillo**, *Judge.*

_____

ARGUED JUNE 15, 2005—DECIDED JULY 18, 2005

_____

Before POSNER, COFFEY, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Christopher Holly was a pretrial detainee at Cook County Jail who was placed in segregation (that is, in solitary confinement) for two days without a prior hearing. He brought suit for damages under 42 U.S.C. § 1983 against the correctional officers responsible for placing him in segregation, contending that the denial of a predeprivation hearing meant that he had been deprived of liberty without due process of law. It is unclear what damages he could prove for being confined to a cell for two days rather than being free to roam the dangerous general-

population area of the jail—and dangerous it is. Ben Bradley, "Doing Time," *ABC News*, Special Segment, Feb. 15, 2005, http://abclocal.go.com/wls/news/specialsegment/print_021405_ss_doingtime.html ("last year, there were 29-seperate [*sic*] stabbings inside the jail"); Tom Rybarczyk, "3 Inmates Are Stabbed During Fight in Cook Jail," *Chi. Trib.*, Jan. 23, 2005, Metro Section, p. 1 (fight between rival gangs at the jail sent three inmates to the hospital and left four others injured—"incident was at least the third stabbing in a Cook County Jail in the last four months. A stabbing in November left a 17-year-old suburban teenager dead"); Patrick Rucker & Jo Napolitano, "21 Hurt in Gang Fight at Cook Jail," *Chi. Trib.*, Oct. 17, 2004, Metro Section, p. 1 (15 inmates treated for superficial wounds by paramedics and six taken to trauma centers); Jeff Coen, "Cook Jail Crowding Fuels New Volatility," *Chi. Trib.*, Mar. 3, 2003, News Section, p. 1 ("officials pointed to two stabbings in the jail in the last few weeks, including a Jan. 24 brawl that left 10 injured"); "4 High-Security Inmates Injured in Brawl," *Chi. Trib.* (sports final ed.), Apr. 11, 2002, Metro Section, p. 3; Frank Main & Carlos Sadovi, "County Jail to Return Convicts to Prison," *Chi. Sun-Times*, Mar. 26, 2002, p. 7 (inmate "stabbed to death in a gang fight" on Saturday and the next day two inmates "stabbed with homemade knives and two others suffered head injuries in beatings with a 16-inch towel bar"); David Southwell, "Personal Approach Keeps Lake County Inmates in Line," *Chi. Sun-Times*, May 26, 1997, p. 40 ("officials at Cook County Jail said an inmate attacks a guard there once a month and that violence between inmates erupts once a week").

Negligible as Holly's damages undoubtedly are, there is no required minimum amount in controversy in a federal civil rights suit; and although being placed in segregation is

too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process, *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); cf. *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003); compare *Wilkinson v. Austin*, 125 S. Ct. 2384, 2394 (2005), a number of cases, influenced by language in *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979), consider any nontrivial punishment of a person not yet convicted a sufficient deprivation of liberty to entitle him to due process of law. *Rapier v. Harris*, 172 F.3d 999, 1002-05 (7th Cir. 1999); *Fuentes v. Wagner*, 206 F.3d 335, 341-43 (3d Cir. 2000); *Mitchell v. Dupnik*, 75 F.3d 517, 524-25 (9th Cir. 1996); *Collazo-Leon v. U.S. Bureau of Prisons*, 51 F.3d 315, 318-19 (1st Cir. 1995); *Walker v. Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993) (per curiam). Nevertheless the district judge found no denial of due process and therefore dismissed the suit for failure to state a claim. So, at least, both sides construe his decision; he himself described it as dismissing a "frivolous" suit, but the difference is without consequences for Holly. 28 U.S.C. § 1915(g). The suit lacks merit, but it is not frivolous.

The guards in this huge, unruly jail (the third largest in the nation—its average daily population in 2002, when the incident that precipitated Holly's suit occurred, was 10,888, Bureau of Justice Statistics, U.S. Dep't of Justice, "Prison and Jail Inmates at Midyear 2002," p. 10)—are required to do headcounts three times a day. Ill. Admin. Code tit. 20, § 701.140(g). According to the incident report, Holly was placed in segregation because he disrupted a headcount by standing in the doorway of his cell, preventing the guard who was conducting the headcount from determining whether Holly's cellmate was in the cell. When the guard asked Holly to step to one side, he refused and told the guard to go fuck himself. After two days in segregation, Holly was given a hearing and then released back into the

general population of the jail, apparently having been found not guilty of disrupting the headcount.

As we noted recently in *Ellis v. Sheahan*, No. 04-3947, 2005 WL 1413905, at *3 (7th Cir. June 17, 2005), the due process clauses do not confer a right to a predeprivation hearing in every case in which a public officer deprives an individual of liberty or property. E.g., *Zinermon v. Burch*, 494 U.S. 113, 128 (1990); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 19-20 (1978); *Ingraham v. Wright*, 430 U.S. 651, 682 (1977); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678-80 (1974). So adamantine a rule would violate the sliding-scale approach of *Matthews v. Eldridge*, 424 U.S. 319, 332-35 (1976), which requires comparison of the costs and benefits of alternative remedial mechanisms, and which was reaffirmed by the Supreme Court just the other day in *Wilkinson v. Austin*, *supra*, 125 S. Ct. at 2395; see also *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2646 (2004) (plurality opinion); *Swank v. Smart*, 898 F.2d 1247, 1255-56 (7th Cir. 1990); *Kapps v. Wing*, 404 F.3d 105, 118 (2d Cir. 2005); *Graham v. City of Philadelphia*, 402 F.3d 139, 145-46 (3d Cir. 2005). A pertinent example is that a person who has been arrested, even though no warrant for his arrest had been issued, may generally be jailed for up to 48 hours before being brought before a judicial officer for the probable-cause determination. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Haywood v. City of Chicago*, 378 F.3d 714, 717 (7th Cir. 2004); cf. *Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975). What happened here was a compelling analogy to an arrest. There was probable cause to believe that Holly was disrupting jail discipline. So he was removed from the general population, corresponding to the free population outside the jail, and placed in isolation, corresponding to the jailing of an arrested person, and he got his hearing in 48 hours, just as he would have had he been arrested "on the street" rather than within the jail.

Due process permits an arrest without a previous hearing because it is dangerous to allow a person who the police have probable cause to believe has committed a crime to roam at large while awaiting a hearing. It is equally dangerous to allow a prisoner who the guards have probable cause to believe has violated a disciplinary rule to roam at large in the general jail population; Cook County Jail has the population of a town. Holly was separated from the general jail population much as arrest separates a free person from the free population, and the hearing he received 48 hours later was all the process that was due him.

This conclusion is supported by *Hewitt v. Helms*, 459 U.S. 460 (1983), even though that case involved convicted inmates rather than detainees, and administrative rather than disciplinary segregation. The Court held that due process was satisfied by providing process "within a reasonable time *after* confining [the inmate] to administrative segregation." 459 U.S. at 472 (emphasis added). It pointed out that "Helms was merely transferred from an extremely restricted environment to an even more confined situation. Under the *Mathews* formula, [Helms] has a far less compelling claim to procedural safeguards than did the pre-trial detainees in *Gerstein*." 459 U.S. at 475. The Court added that "the isolation of a prisoner pending investigation of misconduct charges against him serves important institutional interests relating to the insulating of possible witnesses from coercion or harm," and that "in the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents." *Id.* at 473-74. See also *Hatch v. District of Columbia*, 184 F.3d 846, 852 (D.C. Cir. 1999); *McCormick v. Stalder*, 105 F.3d 1059, 1062 (5th Cir. 1997).

The Court's reasoning controls the present case, as other cases involving pretrial detainees recognize. *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001); *Walker v. Navarro County Jail*, *supra*, 4 F.3d at 412; cf. *King v. Greenblatt*, 149 F.3d 9, 18-19 (1st Cir. 1998). It is true that an earlier decision by the Supreme Court, *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam), leans Holly's way. But it was distinguished in *Hewitt* as a mere pleading case, 459 U.S. at 469, before the Prison Litigation Reform Act made it easier to dismiss a prisoner civil rights suit on the pleadings. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. And see *Frazier v. DuBois*, 922 F.2d 560, 563 (10th Cir. 1991), on the limited significance of *Hughes* after *Hewitt*.

Holly cites decisions in which no hearing was conducted even though the pretrial detainee had been in segregation for far longer than in this case—34 days in *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), and 270 days in *Rapier v. Harris*, *supra*, 172 F.3d at 1002. *Higgs* does not suggest that the hearing had to be predeprivation (nor does *Mitchell v. Dupnik*, *supra*, 75 F.3d at 524-25, a similar case), and the bare suggestion of that in *Rapier* is dictum. *Hawkins v. Poole*, 779 F.2d 1267, 1268 (7th Cir. 1985), recites noncommittally a concession by the defendant that the plaintiff was entitled to a predeprivation hearing, but again it was a case in which no hearing had been conducted, pre-or postdeprivation.

As modified to base dismissal on lack of merit rather than on the suit's being frivolous, the judgment is

AFFIRMED.

No. 03-2448 7

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*