In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2556

WAR N. MARION,

*Plaintiff-Appellant,*

*v.*

COLUMBIA CORRECTIONAL INSTITUTION,
GREGORY GRAMS, MARC CLEMENTS,
Deputy Warden, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 C 243—**Barbara B. Crabb**, *Chief Judge*.

ARGUED JANUARY 28, 2009—DECIDED MARCH 23, 2009

Before BAUER, RIPPLE and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. War Marion, an inmate in the Wisconsin prison system, brought this action under 42 U.S.C. § 1983, alleging that prison officials had denied him equal protection and due process of law during a disciplinary hearing that resulted in 240 days of disciplinary segregation. The district court screened the complaint, *see* 28 U.S.C. § 1915A, and dismissed it for failure

to state a claim upon which relief may be granted. After Mr. Marion appealed that dismissal, we instructed the parties to address whether his 240-day segregation was an "atypical and significant hardship" and therefore implicates a liberty interest, as that term has been explained in *Wilkinson v. Austin*, 545 U.S. 209 (2005), and *Sandin v. Conner*, 515 U.S. 472 (1995). *See Marion v. Columbia Corr. Inst.*, No. 07-2556 (7th Cir. May 1, 2008) (interim order). In harmony with the relevant cases of this circuit, as well as those of our sister circuits, we hold that the 240 days of segregation in this case was sufficiently long to implicate a cognizable liberty interest if the conditions of confinement during that period were sufficiently severe. Mr. Marion therefore should have been allowed to develop a factual record of the conditions of his confinement during his period of segregation. Accordingly, we reverse the dismissal of this action and remand this case for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A.

Mr. Marion alleges the following facts; we must assume them to be true for purposes of this appeal. *See Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005).

Mr. Marion and his cellmate, Clifford Snipes, were in their cell at the Columbia Correctional Institution in Wisconsin when the prison's psychologist, Dr. Andrea Nelson, delivered puzzles to them. Snipes began arguing

with Mr. Marion because Mr. Marion received more puzzles than Snipes. Snipes then charged at him; Mr. Marion responded by clenching his fists. When Dr. Nelson returned to the cell, she saw Mr. Marion's response and went to alert corrections officers. Correctional officers came to the cell to separate Mr. Marion and Snipes; Mr. Marion was placed in segregation.

Prison officials then began formal disciplinary proceedings, which, Mr. Marion alleges, lacked adequate procedural protection. First, prison officials issued Mr. Marion a conduct report containing false accusations of misconduct. The prison then scheduled a hearing to allow him to contest the report, but refused his request for two (of four) witnesses, specifically, Dr. Nelson and the captain who investigated the incident. Next, prison officials appointed a prison advocate for Mr. Marion, but the advocate failed to assist him. Finally, prison staff kept Mr. Marion away from the hearing and later signed a false statement that he had refused to attend. At the conclusion of the hearing, Mr. Marion was disciplined with 240 days—approximately eight months—of segregation. Because Mr. Marion already was serving a term of 180 days of segregation at the less restrictive "D.S.2" level, he was moved to the more restrictive "D.S.1" segregation unit. R.5. Mr. Marion claims that he was required to serve a total of 420 days in D.S.1 segregation.

### B.

After exhausting his administrative remedies, Mr. Marion filed a complaint in the district court. He claimed

that, after the incident with Snipes, prison officials confined him in D.S.1 segregation without due process of law. He also claimed that these officials had violated his equal protection rights by not also disciplining his cellmate for his role in the incident.

The district court dismissed Mr. Marion's complaint under Section 1915A for failure to state a claim upon which relief may be granted. The court concluded that his confinement did not implicate a due process right because the discipline he received did not increase the duration of his confinement or subject him to an "atypical and significant" hardship. *Marion v. Columbia Corr. Inst.*, No. 07-C-243-C, 2007 WL 5445866, at *2 (W.D. Wis. June 8, 2007). The court explained that, under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), prisoners are not entitled to any process "unless the discipline they receive increases their duration of confinement or subjects them to an 'atypical and significant' hardship." In the court's view, placement in disciplinary segregation alone never can meet this demanding standard. Dismissing Mr. Marion's equal protection claim, the court noted that the defendants needed only a rational reason for treating his cellmate differently. In this respect, the district court concluded that Mr. Marion had pleaded himself out of court on this equal protection claim because he acknowledged that, unlike Snipes, he had been caught in an aggressive stance.

Mr. Marion filed a motion for reconsideration. He argued that, at the time of the incident with his cellmate, he was in a less restrictive level of segregation, "D.S.2," serving a term of 180 days based on another false conduct

report. After he received the additional 240 days' segrega-
tion, he was moved to a more restrictive segregation
unit, "D.S.1.," resulting in 420 days of segregation in that
segregation unit. The court denied his motion, stating that
his total time in prison had not been increased, and
therefore, he still had not met the *Sandin* standard.

Mr. Marion then filed a notice of appeal. In granting
Mr. Marion leave to proceed on appeal in forma
pauperis, the district court observed that other circuits
have held that prisoners have a liberty interest in remain-
ing free from similarly lengthy terms of segregation, and
further noted that, in *Whitford v. Boglino*, 63 F.3d 527 (7th
Cir. 1995), we had suggested that due process protections
may be required when a prisoner is sentenced to an
"extreme term[] of segregation." *Marion v. Columbia Corr.
Inst.*, No. 07-C-243-C, 2007 WL 5448211, at *1 (W.D. Wis.
July 11, 2007) (quoting *Whitford v. Boglino*, 63 F.3d 527, 533
(7th Cir. 1995)). The district court consequently granted
Mr. Marion's motion for leave to proceed in forma
pauperis, noting that "there is room for debate among
reasonable jurists whether 240 days in disciplinary seg-
regation is sufficient to trigger due process protections." *Id.*

## II

### DISCUSSION

We review de novo a dismissal for failure to state a
claim upon which relief may be granted under 28 U.S.C.
§ 1915A. *Westefer*, 422 F.3d at 574. We construe all facts
in the light most favorable to Mr. Marion, and we shall

draw all reasonable inferences in his favor. *Wynn v. Southward*, 251 F.3d 588, 592-93 (7th Cir. 2001). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

### A.

Mr. Marion submits that his 240-day disciplinary segregation constituted an atypical and significant hardship that implicates a protected liberty interest under the Due Process Clause.[1] He maintains that the district court misconstrued *Sandin* in concluding that disciplinary segregation cannot trigger due process concerns. Mr. Marion notes that, in *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005), the Supreme Court emphasized that the duration of the segregation is relevant in determining whether a protected liberty interest exists. He further observes that our decisions distinguish between short terms of segregation, typically less than six months, where generally no liberty interest is at stake, and longer terms of segregation in which a liberty interest *may* arise depending on the actual conditions of segregation as reflected in a factual record.

The defendants respond that segregation never offends a liberty interest unless it is indefinite and prevents eligibility for parole. They observe that the provision

---

[1] Mr. Marion does not raise the equal protection argument on appeal.

under which Mr. Marion was disciplined carries a maximum term of only 360 days of segregation, and it neither extends the prisoner's term of incarceration nor affects the prisoner's eligibility for parole. *See* Wis. Admin. Code § 303.84. The defendants concede that *Sandin* does not settle definitively the issue of whether an inmate has a liberty interest in avoiding lengthy disciplinary segregation; however, they maintain that the "general tenor" of the opinion exhibited a "disapproval of excessive judicial involvement in day-to-day prison management." Appellees' Br. 8-9 (quoting *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)). In the defendants' view, this case is different from *Wilkinson* because *Wilkinson* involved an indefinite placement of a prisoner in a more restrictive prison and disqualified the prisoner from parole consideration. *See Wilkinson*, 545 U.S. at 223-24.

**B.**

We begin our evaluation of these arguments with an examination of the Supreme Court's decisions in *Sandin* and *Wilkinson*. In *Sandin*, 515 U.S. 472, the Supreme Court addressed whether a prisoner's sentence of thirty days of segregated confinement triggered due process considerations. It first observed that the Court previously had not addressed "whether disciplinary confinement of inmates itself implicates constitutional liberty interests." *Id.* at 486. The Court then held that a prisoner's sentence of thirty days of segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* It

further concluded that the prisoner's confinement "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction," nor did it affect the length of his sentence. *Id.* at 486-87.

The Supreme Court revisited the issue of prison segregation and due process rights in *Wilkinson.* In that case, prisoners were transferred to a maximum-security prison and placed in segregated confinement for an indefinite duration. *Wilkinson*, 545 U.S. at 214, 216-17. The prisoners were denied virtually all sensory and environmental stimuli, permitted little human contact and disqualified from parole eligibility. *Id.* at 214-15. The Court concluded that although "any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224.

The Supreme Court's decisions in *Sandin* and *Wilkinson* establish that disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation. *See Wilkinson*, 545 U.S. at 224; *Sandin*, 515 U.S. at 486. Although the defendants contend that a prisoner's due process protections are triggered only by indefinite segregation and parole disqualification, we have declined to read *Wilkinson*'s holding as being limited to its specific facts. *See Westefer*, 422 F.3d at 590 ("Illinois' contention that the liberty interest identified in *Wilkinson* turned exclusively on the absence of parole constitutes, [in] our view, far too crabbed a reading of the decision."). The Supreme Court's decisions are helpful

in setting out the durational parameters of a prison-segregation due process analysis. There nevertheless remains a significant area in which the presence of a cognizable liberty interest is not self-evident from a reading of these cases. In these situations, we must make the necessary determination by analyzing the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period.

The defendants correctly note that, in some cases, we have described an inmate's liberty interest in avoiding segregation as very limited or even nonexistent. For example, in *Townsend v. Fuchs*, 522 F.3d 765 (7th Cir. 2008), which involved a prisoner segregation term of fifty-nine days, we concluded that "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend*, 522 F.3d at 766, 771. However, those cases, like *Sandin*, all involve relatively short periods of segregation.[2]

---

[2] *See Townsend v. Fuchs*, 522 F.3d 765, 766, 772 (7th Cir. 2008) (holding that "inmates have no liberty interest in avoiding placement in discretionary segregation") (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (holding that the punishments the plaintiff suffered because of his disciplinary conviction—demotion in status, segregation and transfer—raise no due process concerns) (60 days); *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005) (noting that "being placed in segregation is too trivial an incremental deprivation of a
(continued...)

In a number of other cases, we have explained that a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh. For example, in *Whitford*, we noted that six months of segregation is "not such an extreme term" and, standing alone, would not trigger due process rights. *Whitford*, 63 F.3d at 533. Nevertheless, we remanded for a factual inquiry as to whether the conditions of the prisoner's confinement "were significantly altered when he was placed in segregation." *Id.* at 533. We similarly have recognized the need for additional factual development in a case that involved one year of segregation. *Bryan v. Duckworth*, 88 F.3d 431, 433-34 (7th Cir. 1996), *abrogated on other grounds, Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998). We explained in *Bryan* that both the duration *and* the conditions of the segregation must be considered in the due process analysis; if the conditions of segregation were significantly harsher than those in the normal prison environment, "then a year of [segregation] might

---

[2] (...continued)

convicted prisoner's liberty to trigger the duty of due process") (2 days); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (analyzing conditions of confinement, but also noting that prisoner's segregation "was still not so long as to work an atypical and significant hardship") (90 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated and noting "it was obviously a relatively short period when one considers his 12 year prison sentence") (approximately 70 days).

count as a deprivation of liberty where a few days or even weeks might not." *Id.* at 433. In *Wagner v. Hanks*, 128 F.3d 1173, 1174, 1177 (7th Cir. 1997), we vacated a dismissal on the pleadings and remanded for additional fact-finding with respect to a one-year segregation. *Wagner*, 128 F.3d at 1174, 1177. In doing so, we noted specifically that "the absence of any factual record in the district court on the issue makes it inappropriate for us to affirm out of hand." *Id.* at 1177.

Mr. Marion's term of 240 days' segregation is significantly longer than terms of segregation imposed in cases where we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement. *See Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005). Indeed, a term of 240 days of segregation is more akin to the confinements for which we have ordered remands for further inquiry into the conditions of confinement. Following *Whitford* and later cases, it is clear that a term of segregation as lengthy as Mr. Marion's requires scrutiny of the actual conditions of segregation.

Our decision that Mr. Marion's complaint states a claim is consistent with the decisions of our sister circuits.[3]

---

[3] *See, e.g., Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (noting that cases involving segregation of less than 30 days may be dismissed without a detailed factual record of conditions of confinement, but holding that 77 days' segregation

(continued...)

Indeed, other courts of appeals have held that periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions.[4] Accordingly, the approach of other circuits

---

[3] (...continued)

warrants further review); *Mitchell v. Horn*, 318 F.3d 523, 527, 532-33 (3d Cir. 2003) (remanding the dismissal of a claim of 90 days' segregation "given the 'fact-intensive inquiry' implied by *Sandin*"); *Hatch v. District of Columbia*, 184 F.3d 846, 848, 857-58 (D.C. Cir. 1999) (explaining that seven-month segregation required additional factual development); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (reversing dismissal of a claim involving two years' segregation for additional fact-finding); *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (reversing dismissal of a claim involving 75 days' segregation where district court had failed to examine conditions of confinement).

[4] *See Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007), *cert. granted sub nom. Ashcroft v. Iqbal*, 128 S. Ct. 2931 (2008) (explaining that a segregated confinement of 305 days or more necessarily triggers due process protections, and segregation lasting 101 to 305 days may trigger due process protections, depending on the conditions of segregation); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (reversing dismissal of claim involving 750 days' segregation, stating that when a "prisoner is subjected to a lengthy period of segregation, the duration of that confinement may itself be atypical and significant"); *Williams v. Fountain*, 77 F.3d 372, 374 (11th Cir. 1996) (holding that one year of solitary confinement was sufficient to state a claim); *but see Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months' segregation, alone, does not implicate a liberty interest).

suggests that Mr. Marion's claim of confinement in segregation for 240 days may implicate a liberty interest, and therefore, further fact-finding is necessary.

The defendants maintain that, as a matter of law, Mr. Marion cannot state a claim under the Due Process Clause because the conditions of his confinement are not harsher than the conditions found in the most restrictive prison in Wisconsin. *See Wagner*, 128 F.3d at 1175-77. The defendants' argument is decidedly premature at the pleading stage. Mr. Marion has complied with Federal Rule of Civil Procedure 8 and has put the defendants on reasonable notice of his allegation that he was denied due process of law when he was punished with 240 days of segregation in D.S.1. Moreover, since *Wagner*, which emphasized the tentative nature of guiding principles in this field and invited further guidance from the Supreme Court, the Supreme Court has stated that whether an inmate has a protected liberty interest must be determined from the *actual* conditions of confinement and not simply from a review of state regulations. *See Wilkinson*, 545 U.S. at 223 ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " (quoting *Sandin*, 515 U.S. at 84)). As *Wilkinson* and the decisions from our sister circuits also emphasize, we must take into consideration all of the circumstances of a prisoner's confinement in order to ascertain whether a liberty interest is implicated.

Without a factual record, we cannot determine whether the actual conditions of Mr. Marion's lengthy segregation are harsher than the conditions found in the most restrictive prison in Wisconsin. We therefore must reverse the dismissal of Mr. Marion's due process claim and remand this case to the district court for further proceedings.

## Conclusion

Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion. The parties shall bear their own costs of this appeal.

REVERSED AND REMANDED