# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2446

WAR N. MARION,

*Plaintiff-Appellant*,

*v.*

DYLON RADTKE, JANEL NICKEL, and
CHAD KELLER,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-cv-243-bbc—**Barbara B. Crabb**, *Judge*.

SUBMITTED MAY 11, 2011—DECIDED JUNE 2, 2011

Before EASTERBROOK, *Chief Judge*, and COFFEY and
RIPPLE, *Circuit Judges*.

PER CURIAM. While imprisoned at the Columbia Cor-
rectional Institution in Wisconsin, War N. Marion was
placed in the prison's most restrictive disciplinary seg-
regation, which it calls DS-1, because he had com-
mitted misconduct while in DS-2, a less restrictive en-
vironment. Marion's term in DS-1 was 240 days, and
he complained about the procedures that the prison
had used to find that he violated the prison's rules.

The due process clause of the fourteenth amendment, on which Marion relied, applies only to deprivations of life, liberty, and property. Otherwise states are free to act summarily. Defendants contended that 240 days in DS-1 segregation at Columbia did not deprive Marion of liberty or property under the approach of *Sandin v. Conner*, 515 U.S. 472 (1995), and *Wilkinson v. Austin*, 545 U.S. 209 (2005), the most recent opinions in which the Supreme Court has considered how the due process clause applies to prisoners' living conditions. See also, e.g., *Meachum v. Fano*, 427 U.S. 215 (1976). We held that 240 days in conditions materially more onerous than "the ordinary incidents of prison life" (*Sandin*, 515 U.S. at 484), could deprive a person of a "liberty." *Marion v. Columbia Correctional Institution*, 559 F.3d 693 (7th Cir. 2009). We added that evaluation depends on "the *actual* conditions of confinement and not simply . . . a review of state regulations." *Id*. at 699 (emphasis in original). With that observation we remanded so that the district court could compare the conditions of DS-1 status at Columbia with those at a high-security prison in Wisconsin, the sort of institution to which a prisoner may be assigned, *Meachum* holds, without any opportunity for a hearing.

*Wilkinson* shows that a comparison to a "supermax" prison (the comparison defendants propose) is not appropriate. Comparison with the sort of secure institution that a judge would have considered when sentencing a prisoner is more apt. Anticipated prison conditions affect the length of sentences: The more onerous a prison system's norm, the shorter a sentence can be and still

achieve a desired amount of deterrence and punishment. The due process clause requires hearings when a prisoner loses more liberty than what was taken away by the conviction and original sentence. That's why the right comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which a prisoner is actually held. See also *Lekas v. Briley*, 405 F.3d 602, 608–09 (7th Cir. 2005).

On remand, the district judge dismissed all defendants other than the three responsible for deciding to place Marion in DS-1 segregation without the additional procedures that Marion wanted. These defendants moved for summary judgment. That was the time for Marion to supply some evidence about how the conditions of DS-1 confinement differ from those of the general population in one of Wisconsin's high-security prisons. What he showed was: Nothing. Having won from this court the right to support his claim with evidence, Marion chose not to use that right. Instead he contended that the burden of production (and presumably the burden of persuasion) should be borne by the state, which has the best access to such information. The district judge was not persuaded and granted summary judgment to the defendants. 2010 U.S. Dist. LEXIS 57806 (W.D. Wis. June 11, 2010). We are not persuaded either.

This is a civil suit. The burden of production and the risk of non-persuasion rest with the plaintiff in civil litigation. *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). Statutes, and the common law, assign affirmative defenses to defendants, but whether a prison has

reduced a prisoner's liberty is an element of his claim, not an affirmative defense. Sometimes judges require defendants to raise particular issues that otherwise could be bypassed. In employment-discrimination suits, for example, an employer that wants to contend that some reason other than race, sex, or another protected characteristic accounts for its decision, must offer an explanation for the adverse employment action; the employee need not anticipate what the employer may have to say for itself. But once an employer explains its action, the plaintiff bears the burden of producing evidence to show that the explanation is a pretext for discrimination. See, e.g., *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143–44 (2000); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). So too in prison litigation. Once the custodian contends that the difference between one cell and another does not affect liberty, the prisoner must reply with evidence.

When answering Marion's complaint, defendants denied that conditions in DS-1 confinement deprived him of liberty or property. Marion had to come up with evidence to demonstrate otherwise. His status as an inmate does not change that burden. He could have used discovery to gather information bearing on the "liberty" question but did not try the procedures of Fed. R. Civ. P. 26. When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Marion failed to meet his burden of production. The answer to the question "does 240 days

of DS-1 confinement at Columbia Correctional Center deprive a prisoner of a liberty interest?" must await another day.

AFFIRMED