NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 29, 2012[*]
Decided May 10, 2012

*Before*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2139

| | |
|---|---|
| SAEED YOUNGER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 10-454-GPM |
| | |
| DONALD A. HULICK, et al., | G. Patrick Murphy, |
| *Defendants-Appellees.* | *Judge*. |

**O R D E R**

A prison disciplinary committee punished Saeed Younger with three months of segregation after crediting a guard's accusation that he had caught Younger with gang-related contraband. The committee's decision was overturned on administrative review, but by then Younger had already served the penalty. He responded with this suit under 42 U.S.C. § 1983. As relevant to this appeal, he claims that seven employees of the Menard Correctional Center,

---

[*]The defendants were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. *See* FED. R. APP. P. 34(a)(2)(C).

the prison in Illinois where the incident occurred, deprived him of liberty without due process. At screening under 28 U.S.C. § 1915A, the district court dismissed Younger's complaint with the explanation that his disciplinary hearing was free of error. Because we find that the district court erred in determining that Younger failed to state claims for the denial of due process, we reverse the dismissal of these claims.

For purposes here, we accept as true the facts as told by Younger. *See Ortiz v. Downey*, 561 F.3d 664, 666 n.2 (7th Cir. 2009). A prisoner housed next to Younger wanted to borrow another inmate's copy of *Huey: Spirit of the Panther*, a biography of Huey Newton. The book was on Menard's list of authorized publications, and a helpful guard tossed it up toward Younger's neighbor from the owner's tier on the floor below. The book missed its target, however, and landed on the floor outside and between the two cells. Another guard saw it on the floor and asked who it belonged to. Both inmates in the neighboring cell shouted to the guard that the book was meant for them. The guard heard them and knew the book was authorized, but instead of passing it along, he wrote up Younger for possessing contraband and participating in gang activity. At his disciplinary proceeding, Younger wanted to call as witnesses the book's owner and the neighboring inmate who had asked to borrow it. Both prisoners were willing to testify, but the two members of the disciplinary committee declared the proposed testimony would be irrelevant and refused to hear from them. The committee instead relied on the guard's written statement that someone in Younger's cell, not the neighboring cell, had claimed the book. The committee found him guilty, and the warden approved the committee's decision. Younger submitted a grievance arguing that the committee members had wrongly prevented him from calling his witnesses. That contention was rejected by his grievance officer and the warden at the first level of review, but a year later the prison system's Administrative Review Board agreed with Younger and expunged his record.

Younger then sued the guard who found the book, the two members of the disciplinary committee, his grievance officer, the warden, and two other employees. In his amended complaint Younger alleges that all of the defendants knew that the Newton biography was not contraband and also knew that he did not have any connection to the book except that it landed near his cell. The defendants, he asserts, fabricated or condoned false accusations to "retaliate" for his suspected gang affiliation. The district court read Younger's complaint to raise claims that the misconduct charges were retaliatory and that he was disciplined without due process given that his witnesses were not permitted to testify. According to Younger, the three-month stint in segregation was enough to infringe a liberty interest. The district court bypassed that assertion and instead reasoned, without gleaning factual support from Younger's amended complaint or its attachments, that his interest in presenting witnesses was outweighed by the defendants' security concerns. On that basis, the court concluded, the amended complaint does not state a claim for the denial of due process. Neither does the complaint state a retaliation

claim, the court continued, because Younger does not allege that the defendants sought to punish him for the exercise of a constitutional right.

On appeal Younger does not mention his retaliation claim, which he thus abandons. *See Local 15, Int'l Broth. of Elec. Workers, AFL-CIO v. Exelon Corp.* 495 F.3d 779, 783 (7th Cir. 2007); *Provident Savings Bank v. Popovich*, 71 F.3d 696, 699–700 (7th Cir. 1995).[1] He principally argues that the district court erred by assuming that the members of the disciplinary committee were justified in refusing to hear from his witnesses and thus did not violate his right to due process. Security concerns sometimes justify limiting an inmate's right to call witnesses. *See, e.g., Scruggs v. Jordan*, 485 F.3d 934, 940 (7th Cir. 2007); *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002). But such decisions must have support in the record. *See Ponte v. Real*, 471 U.S. 491, 497 (1985); *Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992). Relevance, not safety, was the reason given by the defendants in their written statement of reasons, and the Administrative Review Board found that explanation untenable.

We remand the case for this reason, but we note that other barriers stand between Younger and the relief he seeks. In his complaint Younger assumes that his segregation interfered with a liberty interest protected by the Due Process Clause. We have held, however, that due process claims based on "relatively short" terms of segregation implicate no protected liberty interest, while longer terms may implicate a liberty interest depending on the conditions of confinement. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) (collecting cases). At 90 days, Younger's segregation falls just beyond those terms that we have held do not require inquiry into conditions. *See id.*; *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir.

---

[1]Even if Younger meant to pursue his retaliation claim, we would agree with the district court's conclusion that his amended complaint does not state a claim for retaliation. Younger's theory appears to be that he was "retaliated" against since, if the facts are as he alleges, the guard who found the book fabricated the accusations against Younger. But falsifying a disciplinary charge does not give rise to a claim under § 1983 unless the motive for the fabrication was to retaliate *for the exercise of a constitutional right*. *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). And, as the district court explained, Younger does not allege that type of motivation for the defendants' actions. Younger's amended complaint does mention the First Amendment, but he alleges that the defendants knew he did not have any connection to the Newton biography. Thus, Younger cannot be claiming that they retaliated for an expression of interest in learning about Huey Newton or the Black Panther Party. And since the right of association does not extend to affiliating with a prison gang, *see Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005); *Fuller ex rel. Fuller v. Decatur Public Sch. Bd. of Educ. Sch. Dist. 61*, 251 F.3d 662, 667 (7th Cir. 2001), neither would Younger have a retaliation claim if, as he suspects, the defendants punished him because of his gang connections, whether real or imagined.

2005) (90 days' segregation, 56 days of which were disciplinary); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days' disciplinary segregation). On remand the district court should therefore determine whether Younger's segregation was unusually harsh compared to the normal prison environment. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Marion*, 559 F.3d at 697–98. If so, Younger must demonstrate that the law on this point was clearly established if he is to overcome the defendants' qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Either of these issues could foreclose recovery, and Younger would benefit from the assistance of counsel in assessing his position.

Accordingly, we **AFFIRM** the dismissal of Younger's retaliation claims, **REVERSE** the dismissal of his due process claims, and **REMAND** with instructions that the court consider recruiting counsel for Younger and that the strike imposed by the district court be removed.