NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 23, 2014[*]
Decided May 23, 2014

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 13-2459 | |
| ANDREW M. OBRIECHT,<br>    *Plaintiff-Appellant,* | Appeal from the United States<br>District Court for the Eastern District<br>of Wisconsin. |
| *v.* | No. 10-CV-221-JPS |
| RICK RAEMISCH, et al.,<br>    *Defendants-Appellees.* | J.P. Stadtmueller,<br>*Judge.* |

## O R D E R

Andrew Obriecht, a Wisconsin inmate, was disciplined for misconduct. He filed this action under 42 U.S.C. § 1983 claiming that he was disciplined without due process and in retaliation for submitting grievances about prison conditions. The district court granted summary judgment for the defendants. We affirm that decision.

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Obriecht was convicted of six counts of sexual assault for, among other things, barging in on a high school girl while she was in a bathroom stall and touching her leg, and for entering a high school girls' locker room. While in prison he obtained the names and addresses of several recent high school graduates from the community and wrote them letters. The young women and their families were distressed by the unsolicited letters. Several complained and requested that Obriecht not contact them.

When a prison employee discovered that Obriecht had written the letters while working at his job in the library, the employee drafted a disciplinary report accusing Obriecht of using a library typewriter without authorization while on the job, misusing the mail to send intimidating letters, and possessing contraband (a memo addressed only to prison personnel). In June 2007 Obriecht received a copy of the disciplinary report, was advised of his right to a disciplinary hearing, and was assigned a staff member to serve as his advocate. At the hearing he did not deny writing the young women or using library time and equipment. The hearing officer found Obriecht guilty and imposed 180 days of disciplinary segregation as punishment (though he served only 78 days before being transferred to a higher-security facility). Obriecht also lost his job. His administrative appeals were denied, and later that year he was denied parole.

In May 2011 Obriecht filed a second amended complaint naming more than a dozen defendants, including two members of the state's parole commission and everyone connected with the disciplinary process and its aftermath. Essentially he claimed—relying on several overlapping theories—that the defendants had fabricated the disciplinary charge, punished him with segregation, taken away his job, transferred him to a higher-security prison, and denied him parole, all in retaliation for three grievances about prison conditions he had submitted in March and May 2007. The submission of those grievances, he asserted, was protected by the First Amendment.

Obriecht had asked the district court to enlist counsel when he filed his original complaint, but the court denied that motion without prejudice after concluding that the complaint must be amended to comply with Federal Rule of Civil Procedure 8(a). Obriecht renewed his request for counsel the following month when he filed his first amended complaint. But Obriecht's new complaint had grown *longer* and now included more than 40 defendants instead of the original 7. Again the court concluded that the complaint must be amended and denied without prejudice Obriecht's request for counsel. The court explained that a decision about the need for counsel would be premature until Obriecht had filed a "focused complaint that is short and plain rather than an encyclopedia of all the various, but unrelated, wrongs he has suffered."

Obriecht then filed his second amended complaint, but he did not request counsel again after the court screened that complaint and allowed it to proceed.

The case proceeded against 13 defendants. (The defendants and the district judge count 17, but Obriecht's second amended complaint names only 14 defendants, one of whom the district court dismissed at screening. Whether the number is 13 or 17 makes no difference on appeal.) In granting summary judgment for the defendants, the district court reasoned that all but four of them had submitted undisputed evidence that they knew nothing about Obriecht's three grievances when they participated in the events he characterizes as retaliatory. And the four defendants who did know about the grievances, the court continued, were not involved directly in lodging or investigating the disciplinary report, conducting the disciplinary hearing, taking away Obriecht's job, transferring him to a more-secure facility, or denying him parole. Thus, the court noted, none of them had participated in any adverse action that could lead to liability. In addition, the court concluded, Obriecht could not establish that he was deprived of due process because he did not offer sufficient evidence of a protected liberty interest.

On appeal Obriecht first challenges the district court's determination that, except for a few defendants, he cannot even establish knowledge of the grievances underlying his theory of retaliation. This knowledge, Obriecht maintains, is shown by the affidavits he submitted from several inmates who attest that information about inmate grievances spreads rapidly among prison staff. A genuine issue of material fact exists, he argues, because prison staff could have known that he submitted the grievances. He also argues that the defendants' affidavits denying knowledge should be discounted because those denials are "self serving."

The district court correctly ruled for these defendants on the retaliation claim. Obriecht engaged in protected First Amendment activity when he submitted his three grievances about prison conditions. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). But as the district court explained, he could not prevail on a retaliation claim without evidence that a particular defendant knew about those grievances. *See Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006).

Obriecht offered inmates' opinions that word about grievances travels quickly through the prison, but none of his inmate witnesses has personal knowledge that any of the defendants actually knew about the grievances. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (noting that affidavits must be based on personal knowledge, not

speculation or rumors); *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (noting that affidavits must be based on specific facts). In contrast, the defendants submitted affidavits denying knowledge about the grievances. Those affidavits, although "self serving" as many affidavits are, rest on personal knowledge and thus were admissible at summary judgment. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004).

Obriecht also challenges the grant of summary judgment in favor of the four remaining defendants who did know about the grievances. As the district court said, these four administrators were not involved *directly* in sanctioning Obriecht, but each of them did participate in ruling against him when he used the administrative process to appeal the discipline. In Obriecht's view, these defendants were authorized to address his accusation that he was being disciplined unfairly and thus retaliated against him by not correcting perceived errors at his disciplinary hearing. The timing of their adverse decisions, he insists, combined with their knowledge of his three grievances was enough to shift the burden to them to show that they would have ruled the same way had he not filed those grievances.

At summary judgment, however, Obriecht offered no direct evidence that any of the four harbored a retaliatory motive, and instead he inferred retaliation entirely from the "suspicious timing" of their actions. But these defendants were responsible for processing Obriecht's administrative appeal from the finding of misconduct and resulting punishment, so there was nothing at all suspicious about the timing of their actions vis-a-vis his three grievances about prison conditions. Their involvement, as well as the timing of their decisions, followed from Obriecht's choice to seek review of the discipline. *See* WIS. ADMIN. CODE §§ DOC 303.76(7), 310.08(3), 310.11–310.14; *State ex rel. Grzelak v. Bertrand*, 665 N.W.2d 244, 253 (Wis. 2003). That they did not reverse the hearing officer's verdict does not make them responsible for defects—even unconstitutional defects—in the underlying proceedings. *See McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007).

Obriecht next argues that the district court mistakenly concluded that, as far as the record shows, he was not deprived of a protected interest and, thus, could not get beyond summary judgment on a claim for denial of procedural due process. It was enough, says Obriecht, that he spent time in segregation, lost his job in the prison library, and was turned down for parole. (On appeal Obriecht says nothing about his transfer to a higher-security prison, and thus he has abandoned his contention that the

transfer implicated a liberty interest. *See United States v. Bryant*, No. 13-1578, 2014 WL 1494102, at *7 (7th Cir. Apr. 17, 2014).)

As the district court correctly observed, Obriecht cannot prove a violation of procedural due process without evidence that he was deprived of a protected liberty or property interest, and that the procedures afforded him were deficient. *See Thompson v. Veach*, 501 F.3d 832, 835 (7th Cir. 2007); *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Obriecht did not have a protected interest in prison employment. *See Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). Neither did he have a liberty interest in parole because he was not more than two-thirds of the way through his sentence, *see Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2006), so his parole argument is a nonstarter.

As for his argument about segregation, Obriecht has asserted a liberty interest based on the length of time he spent in segregation and the conditions of his confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009). The record does not fully illuminate, and the district court did not address, whether Obriecht's disciplinary hearing was procedurally sound. *See Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006). We thus bypass the question and assess whether the evidence at summary judgment could sustain a finding that Obriecht's time in segregation resulted in "atypical and significant hardship" as compared to prison life generally. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilkinson*, 545 U.S. at 223. Although Obriecht submitted a declaration recounting deplorable conditions (in particular having to sleep on a mattress placed directly on the wet floor), he was released from segregation after only 78 days. A confinement of that length does not implicate a liberty interest. *See Marion*, 559 F.3d at 697–98; *Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008); *Lekas*, 405 F.3d at 612. (Obriecht might have challenged the *conditions* in segregation under the Eighth Amendment, just as inmates in the general population may challenge the conditions of their confinement. *See Townsend*, 522 F.3d at 772. We do not address that question, however, because Obriecht has chosen to frame this as a due process claim, and he did not submit evidence establishing that any of the defendants knew about or had control over the conditions in segregation.)

We last turn to Obriecht's argument that the district court abused its discretion by not recruiting a lawyer for him. Obriecht had no right to appointed counsel for this civil suit, *see Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2009) (en banc), and the decision whether to enlist counsel was committed to the district court's discretion, *see Gruenberg*

*v. Gempeler*, 697 F.3d 573, 581 (7th Cir. 2012). The district judge aptly noted in denying Obriecht's two requests for counsel that a decision on that question should wait until the plaintiff had amended his complaint satisfactorily. Both rulings were entered without prejudice, meaning that Obriecht could ask again after he had trimmed his complaint to satisfy Rule 8(a). After his second amended complaint passed screening, however, Obriecht did not renew his request for counsel. And neither did he renew his request for an attorney as the case proceeded through discovery and to summary judgment. And because he did not, he cannot claim error now.

We have reviewed Obriecht's remaining arguments, and none has merit. Accordingly, we AFFIRM district court's judgment.