**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2017[*]
Decided January 18, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1077

| | |
|---|---|
| ANTHONY ALLEN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:13-CV-851-NJR-DGW |
| | |
| CHAD HASEMEYER, et al., | Nancy J. Rosenstengel, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Anthony Allen, an inmate at Menard Correctional Facility, was disciplined with segregation after gathering with a group of African-American inmates in the prison yard. Allen has sued prison employees on three grounds. He asserts an equal-protection claim because officers allegedly permitted a group of white and Hispanic prisoners to

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

gather in the prison yard; an Eighth Amendment claim based on conditions in the segregation cell he occupied for one week; and a due-process claim because he was not present at one of his disciplinary hearings. The district court granted summary judgment for the defendants on all claims. Because Allen provides no evidence of race-based bias, conscious disregard of his cell's conditions, or a loss of liberty, we affirm.

The record contains the following facts, which we construe in Allen's favor. In May 2011 Menard's then-warden told inmates in Allen's cell block that they would receive more recreation time if they stayed off of lockdown status for more than a year. Allen and a group of other African-American inmates gathered in the yard to brainstorm how to accomplish this. Two sergeants approached and told the group that "[g]angs don't run this here. We run this here." They then asked for the inmates' identification cards. Allen states that they told the inmates that they had violated the section of the Administrative Code prohibiting unauthorized group gatherings. One inmate asked why they did not take the IDs of a nearby group of white and Hispanic inmates, to which one sergeant replied, "[D]on't worry about it."

Allen was transferred to a segregation cell. Because an officer gave him only five minutes to collect his belongings, he did not have time to gather his toothbrush, toothpaste, face and bath towels, blankets, and sheets, or his legal materials. Conditions in this cell, where he remained for one week, were problematic. Allen told Correctional Officer Lance Phelps, who worked in the segregation unit, about these conditions and asked to be transferred. He told Phelps that he had no "running water, no electricity, lights, window did not work, . . . hygiene, ventilation was blowing hot air at night . . . , toilet was smeared [with excrement] . . . , the cell smelled of excrement and the walls was [sic] filthy." Phelps said that he could not move Allen, but offered to bring a note to Jerry Whitthoft, the unit sergeant. Allen's note, which Phelps delivered to Whitthoft, asked for a transfer to a cell that was not "condemned" and for his legal materials. Whitthoft did not transfer Allen until the end of his first week in segregation, but he had some of Allen's legal materials sent over the next day.

Before Allen's transfer, conditions did not improve much in the cell. Phelps brought Allen two paper cups of water a day, but he had no shower for a week. Phelps also refused Allen's request for supplies to clean his toilet. Someone mopped the cell floor while Allen was showering, but left the toilet as it was. At the end of the week, Allen transferred to another cell for the remainder of his time in segregation. In that cell "everything was running well."

Meanwhile, Allen received a disciplinary ticket for participating in unauthorized gang activity, *see* 20 ILL. ADMIN. CODE § 504 App. A, 205. He was found guilty at a hearing in May and sentenced to six months in segregation. Allen contested that finding in a grievance, and he received a rehearing where he was again found guilty. The report of the rehearing, which occurred in September, states that "Inmate Allen pled not guilty to the charges." Allen filed another grievance, stating that he had not been notified of the rehearing and had not attended it. That grievance resulted in a third hearing after which the Adjustment Committee expunged the ticket. Allen returned to the general population, having spent a month in segregation after his September rehearing.

The district court granted the defendants' motion for summary judgment on the three claims that Allen maintains on appeal. These are the equal-protection claim for discriminatory enforcement of the gang-activity rule; the cell-conditions claim; and the due-process claim for conducting the September rehearing without Allen present. Before the court ruled on the motion, the defendants notified Allen of the consequences of failing to respond to the motion with evidence. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). The district court then ruled that Allen lacked sufficient evidence to prevail on each claim.

Allen first appeals the dismissal of his equal-protection claim, arguing that the yard officers took IDs only from his group of African-American inmates. To establish a violation of equal protection, a plaintiff must show that he is a member of a protected class and that: (1) he is similarly situated to members of the unprotected class, (2) he was treated differently than members of the unprotected class, and (3) the defendant acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). Allen lacks evidence of the last two elements.

First, Allen has not provided evidence that he was treated differently than similarly situated white and Hispanic inmates. He speculates that these inmates were never ticketed or punished, but he has no personal knowledge or evidence of that. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (plaintiff must present admissible evidence to oppose summary judgment motion). Second, Allen has not presented sufficient evidence that the defendants were motivated by discriminatory bias. *See Chavez v. Illinois State Police*, 251 F.3d 612, 645 (7th Cir. 2001); *Greer*, 212 F.3d at 370. The only "evidence" of discriminatory intent that Allen offers is one sergeant's comment not to "worry" about the other group of inmates. But this statement alone does not evince favoritism toward the other group or antipathy toward Allen's. The district court was thus correct to dismiss Allen's equal-protection claim.

Allen next argues that the district court should not have dismissed his Eighth Amendment claim about his first week in segregation. To survive summary judgment, Allen had to provide sufficient evidence that the conditions in his cell could constitute an Eighth Amendment violation (a point that we'll assume), and that the defendants consciously disregarded a substantial risk of serious harm. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664–65 (7th Cir. 2012). He seeks damages from Phelps and Whitthoft, plus an injunction to remain out of that cell.

With regard to Phelps, we may assume that a reasonable jury could infer that Phelps knew about the conditions in Allen's cell. *Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007). But Allen has furnished no evidence that Phelps "consciously disregard[ed]" those problems. *Rice*, 675 F.3d at 665. Phelps, who did not have authority to move Allen to a different cell, quickly communicated to Whitthoft, who did have that power, Allen's request for another cell. By alerting a supervisor to the request, Phelps fulfilled his duty under the Eighth Amendment. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2016) (guard who is aware of inmate's serious medical issue should alert medical staff); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (public employee is not required to go beyond job requirements to aid prisoner); *see also Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006) (officer fulfills duty by referring inmate's complaint for investigation or taking administrative action).

With regard to Whitthoft, we agree with the district court that Allen cannot establish a claim of deliberate indifference because he has supplied no evidence that the sergeant knew of the cell's condition. *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). Allen vaguely asked Whitthoft to remove him from a "condemned" cell, but Allen did not explain what conditions led him to call it "condemned." Whitthoft could not have left Allen in a cell for a week with deliberate indifference to its conditions when, so far as the record shows, he was not aware of any conditions that required faster action.

We also affirm the dismissal of Allen's claim for injunctive relief. Allen has been removed from the unsanitary cell and returned to the general population; he does not contend that he will return to these conditions again. *Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016). As a result, his claim is moot.

Finally, Allen challenges the district court's dismissal of his due-process claim. The premise of the claim is that Allen was not present at the September rehearing for his disciplinary ticket. We may assume that Allen has presented sufficient evidence that he was absent from his hearing. Nonetheless dismissal of this claim was correct. Whether a prisoner in segregation has been deprived of liberty depends on how far the claimant's

treatment deviates from ordinary prison conditions and the duration of that treatment. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Kervin v. Barnes*, 787 F.3d 833, 835–36 (7th Cir. 2015). Allen had been moved to a segregation cell where "everything was running well" by the time of the alleged due-process violation. Allen has not provided evidence explaining how his condition in this segregation cell compared to a cell in the general population. He was transferred back to a general population cell about a month after the September hearing and does not assert that he suffered any psychological or other injuries as a result of being kept in segregation. *See Kervin*, 787 F.3d at 837. Accordingly Allen has not shown that he was deprived of liberty as a result of the September hearing.

AFFIRMED.