**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 26, 2017[*]
Decided May 31, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-3608

| | |
|---|---|
| CHARLES SMITH, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 15-cv-1017 |
| KEVWE AKPORE, et al., *Defendants-Appellees*. | Sara Darrow, *Judge*. |

**O R D E R**

Charles Smith filed this lawsuit under 42 U.S.C. § 1983 after his release from prison. He principally alleges that the former warden, two guards, and a nurse at Hill Correctional Center in Illinois placed him in segregation without procedural due process and withheld medical care after a heart attack. The district court granted summary judgment for the defendants, and Smith appeals. We affirm the judgment because no

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

reasonable jury could find from the evidence that the defendants violated Smith's constitutional rights.

There are few disputes about the evidence, virtually all of which came from the defendants. Smith was incarcerated briefly at Hill. Within a few weeks of arriving, he wrote the warden, Kevwe Akpore, saying he feared being injured or killed by guards or other inmates. He explained that guards had been telling inmates he was a "rapist, alcoholic crackhead, homosexual." He asked that an investigation be conducted by persons other than Internal Affairs agents, whom Smith accused of being among his harassers.

But the warden instead forwarded Smith's letter to Lieutenant James Carothers, who questioned Smith about his accusations, including that Lt. Carothers was among the harassers. Afterward, Lt. Carothers directed that, for Smith's protection, he be placed in segregation while an investigation was conducted. Although Smith protested that he had not committed a disciplinary infraction and should not be moved to segregation, he remained there for 30 days.

During his third week in segregation, Smith asked to see a mental-health counselor. Instead, a nurse, Lorna Stokes, responded and interviewed Smith to see if he should be placed on suicide watch. He was upset, he told Stokes, because a guard had called him a pervert and other inmates continued to harass him. Stokes reported back to mental-health staff, who decided that Smith was not a suicide risk. Then four days later, Smith reported experiencing chest pains and shortness of breath, which he associated with symptoms of a heart attack. Guards took him to the infirmary, where the same nurse determined that his blood pressure was slightly elevated at 136 over 112 and his pulse was 113. She concluded that Smith was having an anxiety attack, not a heart attack, and within an hour Smith reported feeling better.

Following Smith's anxiety attack, Nurse Stokes initiated "crisis intervention procedures," but Smith refused to speak with her and again asked to see a mental-health professional. The staff member he wanted to see was unavailable, so Smith was placed in observational status, meaning that someone checked his cell every 30 minutes. When a guard later told Smith he was being moved to a different cell for suicide watch, Smith refused to cooperate and was given a disciplinary ticket for disobeying. The guard returned the next day and tried again to move Smith, but once more he defied the guard and received a disciplinary ticket. Two days later, Lt. Carothers told Smith he was being released from segregation because his allegations of harassment could not be

substantiated. Smith avers that he signed a release agreeing to return to general population, but Lt. Carothers says that Smith refused to go to his new housing assignment, prompting yet another disciplinary ticket.

Smith's three disciplinary tickets were resolved together. He requested witnesses only for the first ticket. Smith sought to establish that he wasn't on suicide watch when the guard told him he was being moved, but the Adjustment Committee, chaired by Lieutenant Stephen Damewood, did not call Smith's witnesses. Smith admitted the three infractions, and as punishment he was ordered to serve 3½ months of disciplinary segregation. He also lost recreation and commissary privileges, but his good time was unaffected. Smith had completed approximately three months of his punishment when he was released from prison.

Smith's lawsuit named as defendants Warden Akpore, Lts. Carothers and Damewood, and Nurse Stokes. Smith claimed that he was denied due process when he was placed in investigative and disciplinary segregation. He also claimed that Nurse Stokes was deliberately indifferent to his medical condition. (Smith's complaint included other claims, including that the defendants had retaliated because he wrote to the warden, but his brief on appeal does not make a cogent argument about these claims.) In granting summary judgment for the defendants, the district court reasoned that, as a matter of law, Smith was not entitled to any process before he was placed in segregation. The court further concluded that Smith lacks evidence that the medical care provided by Stokes was outside the range of accepted professional standards.

Smith first challenges the ruling concerning his placements in segregation. No process was required, however, unless Smith had a protected liberty interest in remaining in the general population. *See Isby v. Brown*, 2017 WL 1905966 at *10 (7th Cir. May 10, 2017); *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Prisoners generally do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary. *See Sandin v. Conner*, 515 U.S. 472, 483–86 (1995); *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015); *Marion v. Columbia Corr. Inst.*, 559 F.3d 694, 697–98 (7th Cir. 2009). Smith's 30 days in investigative segregation and approximately 3 months in disciplinary segregation were not long enough to raise a concern under the Due Process Clause. *See Townsend v. Fuchs*, 522 F.3d 765, 766, 771–72 (7th Cir. 2008) (no liberty interest implicated in 59 days' administrative segregation); *Lekas*, 405 F.3d at 604–05, 612 (90 days' segregation at Stateville did not trigger liberty interest); *Thomas v. Ramos*, 130 F.3d 754, 761–62 (7th Cir. 1997) (no liberty interest in 70 days' combined administrative and disciplinary segregation). And since Smith did not have a right to

procedural due process before being moved to segregation, he could not have suffered a constitutional deprivation when the Adjustment Committee chairperson did not summon his requested witnesses. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 558, 564–66 (1974).

Smith also challenges the grant of summary judgment on his claim that Nurse Stokes was deliberately indifferent to his need for medical care. This argument is frivolous. Stokes did treat Smith; she checked his vital signs, evaluated his risk for suicide after determining that his symptoms signaled a panic attack rather than a heart attack, and reported back to mental-health professionals who placed him on observational status. Smith has not alleged that injury resulted from the nurse's course of action; indeed, he did not produce any evidence suggesting that she misdiagnosed his condition. And as the district court observed, Smith has no evidence that Stokes's exercise of professional judgment fell outside the range of acceptable standards. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016).

We have considered the rest of Smith's arguments, and none merits discussion.

AFFIRMED.