NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2017[*]
Decided November 20, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-3141

| | |
|---|---|
| ISRAEL COBIAN, | Appeal from the |
| *Plaintiff-Appellant,* | United States District Court for the |
| | Central District of Illinois. |
| *v.* | |
| | No. 14-cv-1218 |
| CHRISTOPHER McLAUGHLIN and | |
| WAYNE STEELE, | Sue E. Myerscough, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Israel Cobian, a prisoner at Hill Correctional Center in Illinois, sued prison officials under 42 U.S.C. § 1983, alleging that they failed to protect him from a threat of violence posed by other inmates and, after he complained about it, issued an unfounded disciplinary report and segregated him for a month in a cell covered with human feces. At screening the district court concluded that Cobian stated a retaliation claim against two defendants under the First Amendment but that he did not state a claim based upon

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

a failure to protect him or any other theory of relief. The court later granted the defendants' motion for summary judgment on the retaliation claim. Because we conclude that Cobian states a claim under the Eighth Amendment for deliberate indifference to the unsanitary conditions of his cell, we vacate the district court's judgment in that respect; otherwise, we affirm the judgment.

### A.  Initial Screening of the Complaint

In our review of the district court's screening order, we accept as true the facts in Cobian's complaint and draw reasonable inferences in his favor. *See Gonzalez v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011). Cobian sued Major Christopher McLaughlin and Major Wayne Steele, among other defendants (the warden, the Director of the Department of Corrections, and a member of the Illinois Administrative Review Board). He alleged that sometime in 2011 he told Steele that he feared violent retaliation from three gang members against whom he had testified at a criminal trial and who were housed somewhere within the Illinois Department of Corrections but Steele did nothing. In June 2012 he asked McLaughlin to help him obtain records showing that he had testified against the three gang members so that prison officials would not place him anywhere within the Department of Corrections where he could be seen by them. When McLaughlin refused, Cobian asked him for proof that he had been denied this information so that he could "get a court ordered injunction obligating this administration to investigate" his request "to verify that [his] safety could be in danger." McLaughlin immediately "retaliat[ed] on him" by issuing a disciplinary report charging Cobian with intimidating or threatening him. Steele signed that report. McLaughlin also opened an investigation into threats he said Cobian made against his cellmate, but he never investigated anything.

The disciplinary report resulted in three months of segregation. Within the first week, Cobian asked a correctional officer to tell McLaughlin to write a "truthful" disciplinary report and to "get [Cobian] off this bogus investigation." The next day McLaughlin ordered that Cobian be moved to a segregation cell that the prior occupant had covered in his own feces—under the bed, on the window screen, and in the hole through which food was passed into the cell. Correctional officers gave Cobian cleaning supplies hours after he was placed in the cell, but they were inadequate. He remained in the cell for a month despite sending letters or grievances to the warden, the Director of the Department of Corrections, and a member of the Administrative Review Board. None of these defendants took action with respect to Cobian's requests for protective measures or the conditions of his cell.

The judge screened Cobian's complaint under 28 U.S.C. § 1915A. She allowed Cobian to proceed on a First Amendment claim of retaliation against McLaughlin and Steele, but concluded that the other defendants, having simply received letters or ruled on grievances, could not be liable. The judge further concluded that Cobian did not state an Eighth Amendment claim for inadequate protection because Cobian had not alleged that he communicated a specific, credible threat made against him; instead, he alleged "nothing more than a generalized fear of harm in the future from some unidentified prisoners." The judge did not consider whether the conditions of Cobian's confinement in segregation could violate the Eighth Amendment proscription of cruel and unusual punishment.

Weeks later Cobian moved for leave to file an amended complaint. The proposed amended complaint provided more detailed allegations of Steele's and McLaughlin's responses to his requests for help obtaining a protective order, of Steele's role in keeping him in the filthy segregation cell, and of the actions of the dismissed defendants. The judge denied Cobian's motion, however, saying only that it would be futile to reallege that the warden, the Director of the Department of Corrections, and an Administrative Review Board member had any role in the alleged failure to protect him.

## B. Motion for Summary Judgment

After discovery closed, the remaining defendants, Steele and McLaughlin, moved for summary judgment against Cobian on the sole remaining claim—retaliation. They argued that no reasonable jury could conclude that they punished him for activity protected by the First Amendment when he "threatened [d]efendant McLaughlin with a civil suit" or demanded that McLaughlin halt his investigation and alter his disciplinary report. They further argued that Cobian lacked evidence that any of his requests for protection were a motivating factor in the deprivations he endured.

We recount the undisputed facts in the summary-judgment record in the light most favorable to Cobian, the opponent of summary judgment. *See Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016). In 2011 Cobian met with Steele to seek a safe transfer to a prison where he could complete his associate's degree. Cobian said he wanted to ensure that he would not be transferred to a prison that housed any of three gang members whom he had previously testified against. Steele searched Cobian's file and found that it did not reflect that Cobian had testified against anyone. Cobian then asked Steele to find out why the names were missing and remedy the oversight. Steele agreed to do so but never did.

About a year later, Cobian again sought transfer to another prison, this time by meeting with then-Lieutenant McLaughlin and sharing the same information that he gave to Steele. After McLaughlin searched Cobian's file and, like Steele, informed Cobian that he found nothing, Cobian asked McLaughlin to search the Department of Corrections' database for the gang members, saying his "life can be in danger" because he belonged to a rival gang. McLaughlin, becoming impatient, searched for two of the three gang members and found those two were not incarcerated at the same facility as Cobian. McLaughlin refused to look for the third, saying he had better things to do. McLaughlin also refused to call the Cook County State's Attorney's Office to verify that Cobian had testified against these inmates. According to Cobian, he then asked "Can you give me proof that I came to your office with this issue so that I can get a court ordered injunction obligating you to call the States Attorney's Office and ask them for this information?" Cobian says that McLaughlin then took him to segregation—a fact McLaughlin disputes by asserting that the adjustment committee had sole authority to do this.

McLaughlin wrote a disciplinary report against Cobian, stating that he threatened to fight his cellmate if he was returned to the same cell and threatened McLaughlin for not taking security precautions. McLaughlin also opened an investigation into Cobian's threat against his cellmate. Days after the incident Cobian filed a grievance in which he denied threatening his cellmate. About a week after the incident at a hearing that was held by the prison's adjustment committee on the issue of the disciplinary report, Cobian denied threatening McLaughlin but admitted asking him for proof of the visit so that he could take civil action. The committee found Cobian guilty of threatening McLaughlin with civil action and sentenced him to three months' segregation.

The first day of Cobian's time in segregation, he asked a correctional officer to tell McLaughlin to end the "bogus" investigation; the next day Cobian was moved to a segregation cell that had feces from the previous inmate smeared under the bed, on a window and screen next to the bed, and around the port through which he received food and other items. He requested and eventually received cleaning supplies—two cups of bleach and two cups of another disinfectant—which he used to clean underneath the bed. But these supplies were inadequate to remove feces from the screen next to his bed and a caged-off area just above the food port. Cobian says the day after he was placed in this feces-covered cell, he asked Steele to move him, but Steele refused, saying "you shouldn't be threatening my Lieutenant." Cobian remained in the feces-covered cell for one month.

Defendants McLaughlin and Steele moved for summary judgment, and Cobian sought an extension of time to respond until after the defendants filed an outstanding response to his previous discovery request for production of documents. But the defendants refused to provide the discovery, saying they had received Cobian's request two weeks after discovery closed. The judge granted Cobian additional time to respond to the motion, but she did not order the defendants to answer any discovery requests. She said that without a motion to compel, she lacked enough information to evaluate the parties' discovery dispute. Cobian then moved the district court to reopen discovery because, he said, he never received the scheduling order or became aware of a discovery deadline. But the judge denied his motion, reasoning that Cobian's explanation did not warrant reopening discovery six months after it had closed. Cobian substantively responded to the summary-judgment motion but also sought reconsideration of the decision to deny reopening discovery, and he also moved to compel discovery; each request was denied. Despite Cobian's representation that he did not receive the scheduling order, the judge noted that it had been referenced in another order, and Cobian should have spoken up when he received *that* order. Further, the court said, Cobian waited two months after the summary-judgment motion to ask to reopen discovery.

The judge entered summary judgment for McLaughlin and Steele, concluding that Cobian was not engaging in protected speech when he threatened McLaughlin with court action. Further, Cobian lacked evidence of a retaliatory motive for putting him in segregation, writing a false disciplinary report, or keeping him in the befouled cell. Cobian did not contradict the defendants' evidence that they did not decide to sentence him to segregation or select cells for inmates in segregation, and so he could not show that they were directly responsible for his stint in segregation or the conditions of his cell.

## C.  Cobian's Appeal

On appeal Cobian argues that the judge erroneously precluded him from proceeding past the screening stage on Eighth Amendment claims for failure-to-protect him and deliberate indifference to the conditions of his confinement in segregation. He also contests the denial of leave to file his amended complaint against the warden, the Director of the Department of Corrections, and an Administrative Review Board member, contending that each defendant was personally involved in the deprivation of his constitutional rights because they knew of but failed to correct McLaughlin's and Steele's Eighth Amendment violations. Lastly, he challenges the entry of summary

judgment on his First Amendment claim because he presented evidence that he engaged in protected speech and that his speech was the motivation for a trip to segregation, a phony disciplinary report, and his placement in a filthy segregation cell.

We begin with Cobian's challenges to the judge's initial screening order, which expressly foreclosed a failure-to-protect claim and did not address a potential claim about unconstitutional conditions of confinement. Cobian contends that he stated a failure-to-protect claim because prison staff did not take steps necessary to protect him from three members of his rival gang who, like him, were imprisoned in the Illinois Department of Corrections. The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation marks omitted); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). To adequately plead a failure-to-protect claim, a prisoner must allege that officials were subjectively aware of and disregarded an objectively serious risk of harm to the prisoner. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Cobian does not state a claim for relief because he did not allege any facts suggesting that he faced a substantial risk of being attacked by other inmates. Although being branded a "snitch" can pose a substantial risk of harm to inmates, *see id.* at 570, an inmate's cooperation with authorities poses no risk unless fellow prisoners *believe* the prisoner is a snitch. Cobian has not alleged that any prisoner who viewed him as an aid to authorities was actually housed in the same prison as him or that he was being held under circumstances where he was in danger of encountering the rival gang members he testified against. He did not allege that they were even aware or likely to become aware of his presence in the Illinois prison system. The possibility of their transfer to the prison where Cobian was housed—or vice versa—is speculative and does not constitute a *substantial* risk of harm that triggered a duty to protect him. *See Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (suggesting that substantial risk means "risks so great that they are almost certain to materialize if nothing is done"); *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (concluding that an inmate who faced a threat of a possible but implausible prison riot failed to allege a substantial risk). Cobian's fear may be justified in the abstract, but he does not allege that he faced a risk that was "almost certain to materialize" if staff failed to update his file with information about the three gang members.

Cobian argues next that his complaint stated a claim for unconstitutional conditions of confinement because he alleged that McLaughlin, Steele, and the other defendants placed him in a cell covered in fecal matter or left him there after he alerted

them to the conditions by way of a grievance or letter. He contends that the judge precluded him from proceeding on this theory by narrowly reading the complaint at the screening stage without ever considering this claim (or as Cobian puts it, when she "changed [his] claim into a First Amendment claim").

We agree that the judge's reading was too narrow. Cobian alleged that he was placed in a segregation cell that had feces from a previous occupant "splashed . . . everywhere"—under the bed, on the window screen near his bed, and around the food port—and that he was unable to completely clean up the fecal matter for the entire month he was held in that cell. *See McBride v. Deer*, 240 F.3d 1287, 1291–92 (10th Cir. 2001) (holding that the three-day period in the cell covered in human waste without cleaning supplies was sufficient to state an Eighth Amendment claim). Prison officials violate their constitutional responsibility to provide inmates with the minimal necessities of life when they disregard over a significant period an inmate's request to be relieved from exposure to human feces. *See Vinning-El v. Long*, 482 F.3d 923, 923–24 (7th Cir. 2007) (reversing an entry of summary judgment for prison guards where the inmate spent six days in a cell with blood and feces on the walls without running water or sanitation supplies); *Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989) (reversing an entry of summary judgment for a prison guard who denied the prisoner's requests for cleaning supplies and the prisoner spent three days in a cell with feces smeared on the walls); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015); *DeSpain v. Uphoff*, 264 F.3d 965, 974–75 (10th Cir. 2001).

Furthermore, Cobian sufficiently alleged that McLaughlin ordered or knew of his placement in the cell and that Steele and the others were aware of the conditions and did nothing to ameliorate them. So the judge should not have excluded a conditions-of-confinement claim by allowing only the retaliation claim to proceed past the screening stage. True, Cobian did not expressly assert in his complaint that his conditions of confinement violated the Eighth Amendment. But a complaint should not be dismissed based upon the failure to plead a legal theory, or the pleading of an inapt one, if the facts afford some basis for relief in law. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Cobian alleged that the defendants knew that he was living in a cell covered in feces for a month and did nothing, and at the pleading stage, that was enough.

The defendants respond that even if Cobian stated a claim based on their alleged deliberate indifference to his cell conditions, he did not exhaust his administrative remedies related to that claim. In reply Cobian points to his deposition testimony that he

sent the warden a timely emergency grievance about the feces in his cell, and before Cobian sued, the warden returned the grievance, saying the conditions presented no emergency because Cobian's life was not in danger. When a warden has denied an Illinois prisoner's request to consider his grievance on an emergency basis, the prisoner has satisfied Illinois's rules for exhausting emergency grievances. *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citing ILL. ADMIN. CODE tit. 20, § 504.840, and noting that Illinois's regulatory text lacks a requirement that an inmate file a new grievance after learning that it will not be considered on an emergency basis). There is no evidence to dispute Cobian's testimony, *see Pyles v. Nwaobasi*, 829 F.3d 860, 869 (7th Cir. 2016), and this affirmative defense is not unmistakable from the complaint, *see Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002). So we leave for the district court to decide whether Cobian exhausted his administrative remedies, if the defense is raised.

Cobian also appeals the denial of leave to file his amended complaint against the warden, the Director of the Department of Corrections, and an Administrative Review Board member, contending that each official became personally involved in the deprivation of his rights when he notified them that he was placed in an unsanitary cell and they failed to help him. Liability under § 1983 "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 5944 (7th Cir. 2009). "A warden is not liable for an isolated failure of his subordinates to carry out prison policies, however—unless the subordinates are acting (or failing to act) on the warden's instructions." *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998). So to survive a motion to dismiss, Cobian needed to allege that the three other defendants directly contributed to his injury and were not simply vicariously liable for the alleged actions or inactions of Steele or McLaughlin. But because we are remanding the case for consideration of a conditions-of-confinement claim that the district court has not yet addressed, we need not decide in the first instance whether Cobian can sufficiently plead a basis of liability for those three defendants.

Moving on from the pleadings to the district court's decision to enter summary judgment for McLaughlin and Steele on the retaliation claim, Cobian contends that he presented a triable issue of fact about whether they punished him for engaging in protected speech. To survive summary judgment, Cobian needed evidence from which a reasonable jury could conclude that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity caused the deprivation. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Cobian argues that he engaged in protected speech when he told McLaughlin that "if [he] didn't take protective measures[,] [Cobian] would be obligated to get a court ordered injunction ordering him to take the necessary measures," after which McLaughlin wrote Cobian a disciplinary report for threatening him and Cobian was sentenced to segregation. Cobian further asserts that he made protected statements when he told McLaughlin, through an intermediary correctional officer, to end the "bogus investigation" of his threat against his cellmate, after which Cobian was placed in the sordid segregation cell and Steele refused to help him.

The statements that Cobian cites as the basis for his retaliation claim were not protected by the First Amendment. First, Cobian's threat to go to court if McLaughlin did not do what he asked was not protected. Cobian gave McLaughlin—a prison staff member—an ultimatum (i.e., "research my enemies and update my file or I will sue you"), and punishing Cobian's attempt to coerce McLaughlin was reasonably related to a legitimate penological interest in promoting order and obedience. *See Bridges*, 557 F.3d at 551; *see also Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected."). Further, Cobian did not engage in protected speech when he told McLaughlin through an intermediary to end the "bogus" investigation. This demand was insubordinate, and Cobian could (and later did) raise this concern in a less confrontational way by filing a grievance. *See Kervin*, 787 F.3d at 835; *Watkins*, 599 F.3d at 797–99 (concluding that the prisoner's complaint was not protected because it was made in an unnecessarily confrontational manner that was inconsistent with the legitimate penological interests of prison discipline and order).

Even accepting Cobian's argument that he was punished simply because he requested safety measures, which we assume is protected activity, Cobian has not offered evidence that his requests caused the deprivations he complains about. At a hearing on the disciplinary report, the adjustment committee sentenced Cobian to three months' segregation for his undisputed threat of legal action against McLaughlin. Because this unprotected threat was the sole reason Cobian received segregation time, it does not matter that Cobian denies the disciplinary report's specific charges that he threatened his cellmate and denied telling McLaughlin he "was going down" for not protecting him. *See Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (noting that no First Amendment violation occurs if, regardless of the retaliatory motive, the defendants would have punished a prisoner for violating legitimate prison rules). Cobian also contends that the judge erroneously discounted an affidavit from another inmate who said that McLaughlin placed Cobian in the segregation cell because of his requests for

protection, but Cobian has not articulated a basis for overturning the judge's conclusion that this statement was not based on the inmate's personal knowledge. *See* FED. R. CIV. P. 56(c)(4); *Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 454 (7th Cir. 2015).

In a further effort to show a causal connection between his speech and the alleged retaliation, Cobian attempts, unsuccessfully, to dispute McLaughlin's and Steele's attestations that they neither ordered his segregation nor determined which cell to place him in. Cobian offers only his own affidavit in which he attested that another correctional officer told him that the "only way I was going to be moved was if a Lieutenant signed off on the move." At most this statement suggests that Steele or McLaughlin could have removed him from the filthy cell. Cobian asked Steele to move him, and if, as Cobian says, Steele replied, "you shouldn't threaten my Lieutenant," that only underscores the defendants' position that Steele and McLaughlin believed that Cobian had threatened McLaughlin. If a threat against McLaughlin motivated Steele's inaction in the face of Cobian's complaint, then it was not a response to protected speech, although Steele knowingly leaving Cobian in a feces-coated cell might implicate the Eighth Amendment, as discussed above.

Cobian also contends that causation can be inferred from the timing of his conversation with McLaughlin and his placement in the dirty cell, but on its own the one day between these events is insufficient evidence to establish a genuine issue on his retaliation claim. *See Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 505 (7th Cir. 2017) (concluding that a suspension immediately upon returning from FMLA leave was insufficient to support evidence of unlawful intent).

Finally, Cobian challenges the judge's denial of his requests for additional time to complete discovery on his First Amendment claim (the only one that survived screening), arguing that the judge should have accepted his excuse that he missed the discovery deadline because he was unaware of it. We cannot call the judge's rejection of this excuse an abuse of discretion. Further, we will not disturb a district court's limitation on the extent of discovery without a showing of actual and substantial prejudice. *See Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011). Cobian has not meaningfully explained how his retaliation claim can be salvaged by the evidence he sought from the defendants—logbooks of his movement between cells for the relevant period, copies of policies regarding the cleaning of cells and which officers had authority to move inmates between segregation cells, and materials related to the prior occupant of the dirty cell. We have no reason to believe that this requested information could have

led to evidence of unlawful retaliation because none of these materials relate to whether the defendants acted with a retaliatory motive.

Because Cobian's allegations could plausibly lead to relief on a theory that McLaughlin's and Steele's actions related to the filthy conditions of his cell violated the Eighth Amendment, we **REVERSE** the judgment of dismissal and **REMAND** for further proceedings. In all other respects, the judgment is **AFFIRMED**.